Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Annika K. Martin
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000

Joseph G. Sauder (*pro hac vice* pending)
jgs@sstriallawyers.com
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone:  888.711.9975

[additional attorneys listed on signature page]

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, | Case No. 2:18-cv-05010 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| GEORGE TYNDALL, M.D., an individual; UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation; THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA; USC Engemann Student Health Center; and DOES 1-100, | |
| Defendants. | |

1568468.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ........................................................................ 1

JURISDICTION AND VENUE .................................................................... 2

PARTIES ..................................................................................................... 3

FACTUAL ALLEGATIONS ........................................................................ 5

    A.    Plaintiff and Class Members' Experiences ................................. 5

    B.    Defendants' Misconduct ............................................................ 6

CLASS ACTION ALLEGATIONS ............................................................ 11

FIRST CLAIM FOR RELIEF GENDER VIOLENCE, Cal. Civ. Code § 52.4 (Against Defendant Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ................................................. 15

SECOND CLAIM FOR RELIEF SEXUAL ABUSE AND HARASSMENT IN THE EDUCATIONAL SETTING, Cal. Ed. Code § 220 (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ............................................................... 16

THIRD CLAIM FOR RELIEF TITLE IX (20 U.S.C. §1681) (Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ................................................................................. 18

FOURTH CLAIM FOR RELIEF INVASION OF PRIVACY (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ....................................................... 20

FIFTH CLAIM FOR RELIEF SEXUAL HARASSMENT, Cal. Civ. Code § 51.9) (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100) .................................. 21

SIXTH CLAIM FOR RELIEF SEXUAL ASSAULT (Against Defendant Tyndall) ................................................................................ 23

SEVENTH CLAIM FOR RELIEF SEXUAL BATTERY, Cal. Civ. Code § 1708.5 (Against Defendant Tyndall) ..................................... 25

EIGHTH CLAIM FOR RELIEF NEGLIGENCE (Against Defendants USC, the Trustees, the Engemann Health Center, and DOES 1 through 100) ...... 27

NINTH CLAIM FOR RELIEF GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ................................................................................. 29

TENTH CLAIM FOR RELIEF NEGLIGENT SUPERVISION (Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ....................................................................... 31

**TABLE OF CONTENTS**
(continued)

**Page**

ELEVENTH CLAIM FOR RELIEF NEGLIGENCE *PER SE*  California Equity in Higher Education Act, Cal. Ed. Code §§ 66270 *et. seq.* (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)...........................................34

TWELFTH CLAIM FOR RELIEF NEGLIGENT HIRING/RETENTION (Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ...............................................37

THIRTEENTH CLAIM FOR RELIEF NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE (Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100) ...................40

PRAYER FOR RELIEF ...........................................41

DEMAND FOR JURY TRIAL .........................................42

Plaintiff Jane Doe 1 ("Plaintiff"), on behalf of herself and all others similarly situated, files this class action against George Tyndall, M.D. (hereinafter, "Tyndall"), the University of Southern California ("USC"), the Board of Trustees of the University of Southern California (the "Trustees"), the USC Engemann Student Health Center ("Engemann Health Center"), and Does 1-100, and alleges as follows:

## NATURE OF THE ACTION

1.     This is a class action on behalf of individuals who were sexually abused, harassed, and molested by serial sexual predator, Defendant George Tyndall while they were students at USC. These individuals received treatment from Tyndall at USC's medical facilities, including but not limited to the USC Engemann Student Health Center and/or Eric Cohen Student Health Center of USC.

2.     While attending USC as a student, Plaintiff was forced to repeatedly seek medical treatment from Tyndall, due to the fact that he was the only full-time gynecologist on staff at USC's Student Health Clinic. Tyndall used this position of trust and authority to sexually abuse Plaintiff on multiple occasions, by engaging in acts that include but are not limited to: forcing Plaintiff to strip naked, groping Plaintiff's breasts, digitally penetrating Plaintiff's vagina and engaging in verbal discussions about irrelevant and inappropriate sexual topics, for no legitimate medical purpose and for no other reason than to satisfy his own prurient sexual desires.

3.     As is typical with sexual predators, Tyndall had a pattern of behavior and a common course of conduct that he exhibited towards all his victims, including Plaintiff and Class members.

4.     Over the years that Tyndall has been employed by USC, numerous Class members have made eerily similar complaints about his inappropriate, abusive, and harassing behavior, including, but not limited to: Tyndall taking photographs of his female patients' genitals without any medical purpose; making

suggestive comments about patients' bodies during gynecological examinations; touching student-patients' bodies in a manner that had no medical purpose; requiring student-patients to lie fully nude on the table during gynecological examinations; and making improper and sexual comments about their bodies and other comments of a sexual or suggestive nature.

5.    USC had a duty to ensure that Tyndall, the only gynecologist employed by USC and available to students for gynecological care, used his trusted position consistent with the standard of care and ensure that Tyndall did not violate that trust by abusing and harassing students.

6.    As a medical doctor, and as an employee of USC, Tyndall owed Plaintiff and Class members a duty of due care in carrying out medical treatment.

7.    Despite the fact that USC has publicly admitted that it received numerous complaints of Tyndall's sexually abusive behavior, dating back to at least the year 2000, USC actively and deliberately concealed Tyndall's sexual abuse for years, continuing to grant Tyndall unfettered sexual access to the female USC students in his care, all to protect USC's reputation and financial coffers.

8.    Plaintiff seeks appropriate relief on behalf of the other individuals who experienced similar mistreatment by Tyndall and USC.

## **JURISDICTION AND VENUE**

9.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) Plaintiff seeks to represent a nationwide class of the hundreds, or thousands, of individuals sexually abused, harassed, and molested by Defendant George Tyndall, (b) the amount in controversy exceeds $5,000,000, excluding interest and costs, (c) the proposed class consists of more than 100 individuals, and (d) none of the exceptions under the subsection applies to this action.

10.    This Court has personal jurisdiction over Defendants.  They conduct substantial business in this District and intentionally availed themselves of the laws

and markets of this District. A significant portion of the acts and omissions complained of occurred in the District, and Plaintiff and many class members suffered harm in the District.

11.   Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **PARTIES**

*Plaintiff*

12.   Given the sensitive nature of her claims, Plaintiff is using a pseudonym in this litigation to protect her privacy. If required by the Court, Plaintiff will seek permission to proceed under this pseudonym.

13.   At all relevant times, Plaintiff Jane Doe 1 ("Plaintiff") is and was a resident of Los Angeles County, California, and a citizen of California. Plaintiff was a student at the University of Southern California ("USC") where she sought gynecological care through the USC student health clinic system and was examined by defendant George Tyndall on approximately six occasions during approximately 2010 and from 2015-2016. Plaintiff, who had never seen a gynecologist prior to enrolling at USC, was subjected to sexual harassment and inappropriate touching during those examinations.

*Defendants*

14.   At all times relevant hereto, defendant George R. Tyndall, M.D. was an actual and/or apparent, duly-authorized agent, servant and/or employee of USC and carried on a gynecological medical practice in Los Angeles, California.

15.   At all times relevant hereto, Defendant Tyndall is and was a resident of Los Angeles, California and performed medical services for USC student-patients as part of his employment.

- 3 -

16.    Upon information and belief, USC, Trustees, Engemann Health Center, and Does 1 through 100 and at all relevant times herein mentioned were and are:

        a.    A California corporation or other entity, form unknown;

        b.    A citizen of California;

        c.    Having their principal place of business in California; and

        d.    Doing business in Los Angeles County, California.

17.    The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants Does 1 through 100 are unknown to Plaintiff and the Class members who therefore sue these Doe Defendants by such fictitious names pursuant to CODE OF CIV. PROC. § 474. Plaintiff and the Class members will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained.

18.    The Board of Trustees of The University of Southern California is the governing body of USC, a private corporation. The Board of Trustees has approximately 55 voting members.

19.    The Engemann Health Center is a health care facility owned and operated by USC that is available to USC students to "help [them] maintain an optimum level of physical and mental health and to guide them in maintaining a healthy lifestyle."[1]

20.    Upon information and belief, each of the Defendants named in this Complaint, including each of the Doe Defendants, is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

21.    Upon information and belief, each of the Defendants named in this Complaint, including each of the Doe Defendants, is, and at all relevant times

---

[1] *See* https://engemannshc.usc.edu/about/ (last visited June 5, 2018).

herein mentioned was, the agent, servant, and/or employee of each of the other

Defendants, and each Defendant was acting within the course and scope of his, her,

or its authority as the agent, servant, and/or employee of each of the other

Defendants. Consequently, each Defendant is jointly and severally liable to Plaintiff

and the Class members for the damages sustained as a proximate result of their

conduct.

## FACTUAL ALLEGATIONS

### A.    Plaintiff and Class Members' Experiences

22.    Plaintiff Jane Doe 1 is and was a student enrolled at USC. Prior to her

enrollment at USC, Plaintiff had not had access to gynecological care. Therefore,

upon enrolling at USC, she scheduled an appointment at the USC health center.

Following an initial visit with a different physician, she was scheduled with

Defendant Tyndall.

23.    Plaintiff Jane Doe 1 had approximately six appointments with

Defendant Tyndall at USC's facilities between 2010 and 2016. During each visit,

Plaintiff was subjected to sexual harassment and inappropriate touching during

examinations as well as inappropriate verbal comments on sexual issues.

24.    During at least one appointment, Tyndall groped Plaintiff's breasts and

failed to cover her with a hospital gown while performing a digital vaginal

examination. During the exam, Tyndall indicated that he had difficulty "inserting

[his] fingers" into her vagina and that she "must be an athlete" because she was

especially "tight."

25.    Tyndall also pressured Plaintiff into agreeing to have a Nexplanon

contraceptive device implanted in her arm, even though she insisted to him that she

was not sexually active and had no need for contraception.

26.    Further, during several appointments with Plaintiff, Tyndall made

inappropriate comments that had no legitimate medical purpose, including

references to the sexual activities of his other patients.

27.     During one appointment Tyndall mentioned that many of his patients (all students) were sexually active and one student would "go crazy if she didn't have sex."

28.     During another appointment Tyndall insisted on performing a full vaginal exam even though the stated purpose of the appointment was a pap smear. Tyndall refused to take the pap smear because he told Plaintiff it was too soon and that she would need to obtain her medical records before he would take the pap smear. Tyndall insisted on performing a vaginal exam even though Plaintiff said she did not need one and it was not the purpose of the visit; Tyndall responded that "You should have the vaginal exam since you are here." No nurse was present because it was only scheduled as a pap smear.

29.     During another appointment Tyndall mentioned the growing number of school shootings and his concern that female students would be scantily clad during summer and thus somehow provoke more shootings.

30.     Tyndall's inappropriate physical "treatment" and verbal statements to Plaintiff made her uncomfortable to the point of feeling violated.

**B.    Defendants' Misconduct**

31.     At all times relevant hereto, Defendant George R. Tyndall, M.D. was an obstetrician-gynecologist who was licensed to practice medicine in the State of California from 1986 to approximately 2017, and was hired by USC in 1989 following completion of residency in gynecology and obstetrics.

32.     For over 30 years, Defendant Tyndall practiced obstetrics and gynecology as an actual and/or apparent agent, servant and/or employee of USC through its student health clinics and facilities.

33.     At all times relevant hereto, agents, servants, medical staff members, and/or employees of USC including Defendant Tyndall, were acting in the course and scope of their authority, agency, service and/or employment for USC, the Trustees, the Engemann Health enter and/or Does 1-100.

34.    Upon information and belief, beginning in approximately the 1990's, USC and the Engemann Health Center began receiving reports from USC students and employees regarding concerns about Defendant Tyndall's conduct and "treatment" of his patients; nonetheless, both USC and the Engemann Health Center failed to take any action in response to such complaints. USC and the Engemann Health Center received numerous complaints of serious misconduct, including sexual misconduct by Tyndall made to Tyndall's supervisors and other administrators employed by USC, including but not limited to, the executive director of its health center and other university officials.

35.    Rather than addressing and properly investigating the complaints, including taking appropriate disciplinary action and/or terminating the employment of Tyndall, Defendants USC, the Trustees, the Engemann Health Center and Does 1-100 kept the complaints secret to avoid negative publicity despite their actual knowledge of such misconduct, so that for over 30 years, Defendant Tyndall had unfettered access to female students – many of them as young as 17 or 18 years old – through the student health clinics at USC.

36.    USC, the Trustees, the Engemann Health Center, and Does 1-100 hid the complaints despite the fact that many of the complaints came directly from their own employees and staff, including nurses and medical assistants who were physically present during the examinations as "chaperones," and witnessed the sexual misconduct firsthand. Despite receiving years of serious complaints of significant misconduct about Tyndall, including sexual misconduct, USC, the Trustees, the Engemann Health Center and Does 1-100 failed to take any meaningful action to address the complaints until they were finally forced to do so in June 2016.

37.    Upon information and belief, the complaints made to USC, the Trustees, the Engemann Health Center and Does 1-100 included, but are not limited to: Tyndall taking photographs of his female patients' genitals without any medical

purpose; making suggestive comments about patients' bodies during gynecological examinations; touching student-patients' bodies in a manner that had no medical purpose; requiring student-patients to lie fully nude on the table during gynecological examinations; and making improper and sexual comments about their bodies and other comments of a sexual or suggestive nature.

38.    The Engemann Health Center's "Patient Rights and Responsibilities" provides, *inter alia,* that patients have a right "[t]o be treated with consideration, and respect for your dignity and individuality."  It further provides: "Right: To provide comments and/or concerns about your healthcare experience without fearing retribution. Comments/concerns can be made through the website portal, comment card found at all front desks or in person with the Quality & Safety Director. Responsibility: To help Engemann Student Health Center improve its service and environment by providing feedback about service needs, expectations and perceptions of care."

39.    At all times relevant hereto, Plaintiff and the Class members are or were female students attending USC who sought gynecological care through the USC student health system and were patients of defendant Tyndall during his tenure at USC. Plaintiff and other members of the Class had no reason to suspect Defendant Tyndall was anything other than a competent and ethical physician.

40.    Knowing that Plaintiff and other members of the Class were trusting and vulnerable – and in many cases still teenagers – Defendant Tyndall used his position of authority to require Plaintiff and other members of the Class to fully disrobe for no reasonable medical purpose, engage in touching, fondling and groping of Plaintiff and Class members' breasts and other parts of their bodies while making suggestive and improper comments, engage in nonconsensual vaginal penetration, nonconsensual sexual touching and fondling of the vaginal and genital region for the purpose of sexual arousal, sexual gratification, and/or sexual abuse.

Defendant Tyndall also made racially discriminatory and sexually harassing comments.

41.     Through his employment with USC, Defendant Tyndall used his position of authority as a medical professional to take hundreds of nonconsensual and medically unwarranted photographs of female genitalia under the guise of medical "treatment."

42.     Defendant Tyndall particularly targeted young students, many of whom were foreign students, and who were frequently unfamiliar with the nature of gynecological examinations as a result of their youth, inexperience, and/or cultural background. Many of these young women did not know that what Tyndall was doing during the examinations was not proper protocol and did not realize he was engaging in sexual misconduct, sexually violating them, and/or taking advantage of them.

43.     Defendant Tyndall carried out these acts without fully explaining the "treatment" or obtaining informed consent of Plaintiff and other members of the Class.

44.     All of Defendant Tyndall's acts were conducted under the guise of providing medical care at the University of Southern California and its facilities, including the Engemann Health Center.

45.     The failure to give proper notice or to obtain consent for the purported "treatment" from Class Plaintiffs negated their objection to reject the "treatment."

46.     Defendant Tyndall used his position of trust and confidence in an abusive manner causing Class Plaintiffs to suffer a variety of injuries including but not limited to shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, loss of enjoyment of life and negative impacts on their ultimate career and professional prospects.

47.    USC, the Trustees, the Engemann Health Center, and Does 1-100 gave Tyndall access and opportunity to abuse Plaintiff and Class members; but for that access and opportunity, Tyndall could not have abused Plaintiff and Class members.

48.    Upon information and belief, in the 1990's USC Defendants were also put on notice of Defendant Tyndall's actions after receiving complaints from USC employees, including nurses, medical staff, students and chaperones concerning both the photographs of female genitalia and the disturbing sexual behavior toward patients.

49.    Upon information and belief, despite complaints to USC representatives and the Engemann Health Center, the concerns and allegations went unaddressed in violation of reporting policies and procedures and in a manner that was reckless, deliberately indifferent, and grossly negligent. Specifically, the medical director of the student clinic took the camera away from defendant Tyndall but did nothing further to investigate or take corrective action regarding defendant Tyndall's behavior.

50.    Upon information and belief, because Defendants USC, the Trustees, the Engemann Health Center and Does 1-100 all failed to take action to investigate the complaints or to take corrective action regarding Tyndall's actions, Plaintiff and other Class members were sexually assaulted, harassed, abused, and molested by Defendant Tyndall by unnecessary vaginal digital penetration, by unnecessary and non-medical touching and groping their breasts and other areas of their body, and through sexually-suggestive and unnecessary comments and statements.

51.    Upon information and belief, in or around June of 2016, complaints about Tyndall were made to the executive director USC's rape crisis center, known as Relationship and Sexual Violence Prevention and Services, and photographs of female genitalia were found in Tyndall's office.

52.     Only at this time did USC place defendant Tyndall on administrative leave and investigate the complaints made in 2016 through its OED, Office of Compliance, Risk Management. Also, not until this time did USC contract an outside consulting firm, which determined that Defendant Tyndall "exhibited unprofessional and inappropriate behavior" and that his pelvic exams were outside "current standards of care." Upon information and belief, following the investigation, Defendant Tyndall was permitted to quietly "retire" from USC with an unknown amount of settlement money.

53.     On or about May 15, 2018, then-USC President C.L. Max Nikias sent a letter to the USC community (Exhibit "A" hereto), indicating that Defendant Tyndall's "behavior was completely unacceptable. It was a clear violation of our Principles of Community, and a shameful betrayal of our values" and calling the behavior a "profound breach of trust."

54.     Also on or about May 15, 2018, Dr. Sarah Van Orman, Chief Health Officer of the Engemann Health Center, sent a letter to USC students (Exhibit "B" hereto) indicating that she was "deeply troubled by the situation" involving Defendant Tyndall.

55.     Approximately one week after the letters from President Nikias and Dr. Van Orman were sent to the USC community and after about 200 faculty members petitioned for his resignation, USC announced his resignation.

56.     At no time did Defendant USC, the Trustees, the Engemann Health Center or Does 1-100 inform Plaintiff, the public or any other students or patients of the concerns that led to Defendant Tyndall being relieved from his duties at USC and his subsequent "retirement."

## CLASS ACTION ALLEGATIONS

57.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4), Plaintiff brings this action on behalf of herself and the following class of others who are similarly situated:

1    <u>Nationwide Class:</u>  All women who were examined by George Tyndall,

2    M.D. at the University of Southern California (the "National Class").

3       58.    Excluded from the class are Defendants, their affiliates and

4    subsidiaries, and their officers, directors, partners, employees, and agents; class

5    counsel, their immediate family members, and employees of their firms; counsel for

6    Defendants, their immediate family members, and employees of their firms; and

7    judicial officers assigned to this case and their staffs and immediate family

8    members.

9       59.    Plaintiff reserves the right to amend or modify the above class

10   definition with greater specificity or division into subclasses after having had an

11   opportunity to conduct discovery.

12      60.    The Class consists of hundreds, if not thousands, of women, making

13   joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of

14   the Class and the identities of the individual members are ascertainable through

15   records maintained by USC.

16      61.    <u>Numerosity</u>.  The members of the class are so numerous that their

17   individual joinder is impracticable. There are at least 400 class members, whose

18   names and addresses are readily available from Defendants' records.

19      62.    <u>Commonality</u>. There are questions of law and fact common to the

20   class, which predominate over any questions affecting individual members of the

21   class.

22      63.    <u>Typicality.</u> Plaintiff's claims are typical of the other Class members'

23   claims because Plaintiff and Class members were subjected to the same wrongful

24   conduct and damaged in the same manner.

25      64.    <u>Existence and Predominance of Common Questions of Fact and Law</u>.

26   This action involves common questions of law and fact that predominate over any

27   questions affecting individual class members, including, without limitation:

28

a.      Whether Defendants owed a duty to Plaintiff and Class members to protect their health and safety and not to violate their trust;

b.      Whether Defendants breached their duties to Plaintiff and Class members;

c.      Whether Defendants USC, the Trustees, the Engemann Health Center and/or Does 1-100 knew of Tyndall's misconduct, but continued to protect him and allow him access and opportunity to sexually abuse women;

d.      Whether Defendants are liable for gender violence, in violation of the California Civil Code, § 52.4;

e.      Whether Defendants are liable for sexual abuse and harassment in an educational setting, in violation of California Education Code, § 220;

f.      Whether Defendants are liable for violations of Title IX of the United States Code, 20 U.S.C. § 1681;

g.      Whether Defendants are liable for invasion of privacy;

h.      Whether Defendants are liable for sexual harassment, in violation of California Civil Code, § 51.9;

i.      Whether Defendants are liable for sexual assault;

j.      Whether Defendants are liable for sexual battery, in violation of California Civil Code, § 1708.5;

k.      Whether Defendants are liable for negligence;

l.      Whether Defendants are liable for gross negligence and/or wanton and reckless misconduct;

m.      Whether Defendants are liable for negligent supervision;

n.      Whether Defendants are liable for negligence *per se;*

o.      Whether Defendants are liable for negligent hiring/retention;

p.      Whether Defendants are liable for negligent failure to warn, train or educate; and

q.     Whether Plaintiff and Class members suffered harm as a result of Defendants' violations and, if so, the appropriate measure of damages, restitution, or rescission.

65.    <u>Adequacy of Representation</u>.  Plaintiff is an adequate class representative. Her interests do not conflict with the interests of the other Class members she seeks to represent. She has retained counsel competent and experienced in complex class action litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately pursue and protect the interests of the class.

66.    <u>Superiority</u>.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The highly sensitive and private nature of the facts involved here, as well as the fear that bringing an individual suit could affect future treatment by USC, the Trustees, the Engemann Health Center and/or Does 1-100 counsels toward providing a class vehicle to adjudicate these claims. The damages or other financial detriment suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate these claims. As a result, it would be impracticable for class members to seek redress individually. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

67.    <u>Particular Issues</u>.  The claims of class members involve common issues that may be adjudicated on a classwide basis pursuant to Rule 23(c)(4).

# FIRST CLAIM FOR RELIEF
## GENDER VIOLENCE, Cal. Civ. Code § 52.4
### (Against Defendant Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)

68.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

69.    California Civil Code § 52.4 declares, in pertinent part, that any person subjected to gender violence may bring a civil action for damages against any responsible party, and may seek actual, compensatory, and punitive damages therefor, or any other appropriate relief.

70.    For purposes of Civil Code § 52.4, gender violence is a form of sex discrimination and means any of the following:

a.    An act that would constitute a criminal offense under state law that has as an element the use, attempted use or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

b.    A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

71.    Upon information and belief, Tyndall intentionally and without consent of Plaintiff or Class members, made unpermitted, harmful, and offensive sexual and/or other physical intrusion, invasion or contact with the Plaintiff and Class members in violation of Civil Code § 52.4. At all relevant times, Defendant Tyndall acted as a duly authorized agent and/or employee of USC, the Trustees, the Engemann Health Center and Does 1-100.

72.    Defendant Tyndall carried out such actions and conduct as an employee, agent and/or representative of USC, the Trustees, the Engemann Health Center and Does 1-100 and the actions and conduct were carried out under one of

- 15 -

USC's programs, which provides medical treatment to students, athletes, and the public.

73.    Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 are liable and vicariously liable for Defendant Tyndall's conduct.

74.    As a result of the conduct of the Defendants, Plaintiff and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries, damages (both economic and noneconomic) and permanent disability, in the past, present and future, for which this claim is made. The injuries suffered by Plaintiff and the Class members are substantial, continuing, and permanent.

75.    Defendants' conduct as described herein was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiff and the Class members and with a willful and conscious disregard of their rights, justifying an award of punitive damages.

76.    As a proximate result of Tyndall's acts, Plaintiff and the Class members are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiff and the Class members are also entitled to an award of attorney's fees and costs pursuant to Civil Code § 52.4, against Tyndall.

**SECOND CLAIM FOR RELIEF**
**SEXUAL ABUSE AND HARASSMENT IN THE EDUCATIONAL SETTING,**
**Cal. Ed. Code § 220**
**(Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

77.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

78.    Plaintiff and the Class members were harmed by being subjected to sexual abuse, harassment and molestation at USC because of Plaintiff and the Class members' gender and Defendants are responsible for that harm.

79.    Plaintiff and the Class members suffered harassment that was so severe, pervasive, and offensive that it effectively deprived Plaintiff and the Class members of the right of equal access to educational benefits and opportunities.

80.    Defendants USC, the Trustees, the Engemann Health Center and Does 1-100 had actual knowledge that this sexual harassment, abuse, and molestation was occurring. Specifically, Defendants USC, the Trustees, the Engemann Health Center and Does 1-100, by and through their employees, witnessed Tyndall's abuse firsthand, as it was witnessed by multiple chaperones employed by USC, the Trustees, the Engemann Health Center and/or Does 1-100. Further, Defendants USC, the Trustees, the Engemann Health Center and Does 1-100 received, and then actively suppressed and ignored, numerous complaints of Tyndall's sexual abuse, dating back to at least the year 2000.

81.    In the face of this knowledge of sexual abuse, harassment, and molestation that was being perpetrated by Defendant Tyndall upon Plaintiff and the Class members, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 acted with deliberate indifference towards responding to these alarms and preventing further abuse. Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 allowed Tyndall to remain as a physician at USC to sexually harass, abuse and molest patients. It was not until June of 2017 that Defendants allowed or compelled Tyndall to resign, with a monetary settlement, that Tyndall's sexual abuse of young female students of USC finally abated.

82.    As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have

1   suffered and continues to suffer and were prevented and will continue to be

2   prevented from performing daily activities and obtaining the full enjoyment of life;

3   will sustain loss of earnings and earning capacity, and have incurred and will

4   continue to incur expenses for medical and psychological treatment, therapy, and

5   counseling.

6       83.    In subjecting Plaintiff and the Class members to the wrongful

7   treatment herein described, Defendants Tyndall, USC, the Trustees, the Engemann

8   Health Center, and Does 1 through 100, acted willfully and maliciously with the

9   intent to harm Plaintiff and the Class members, and in conscious disregard of the

10  rights of Plaintiff and the Class members, so as to constitute malice and oppression

11  under California Civil Code section 3294. Plaintiff and the Class members are

12  therefore entitled to the recovery of punitive damages, in an amount to be

13  determined by the court, against Tyndall, USC, the Trustees, the Engemann Health

14  Center, and Does 1 through 100, in a sum to be shown according to proof.

15
16  <u>**THIRD CLAIM FOR RELIEF**</u>
    **TITLE IX (20 U.S.C. § 1681)**
17  **(Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

18      84.    Plaintiff restates and incorporates herein by reference the preceding
19  paragraphs as if fully set forth herein.

20      85.    Plaintiff and the Class members were subjected to sexual harassment,
21  abuse, and molestation by Tyndall, as students and medical patients at Defendants'
22  institution.

23      86.    USC is and was a private institution that nevertheless receives and at
24  all times relevant hereto has received federal financial assistance for its various
25  programs.

26      87.    USC, the Trustees, the Engemann Health Center, and Does 1-100, with
27  authority to institute corrective measures, had actual notice that Tyndall posed a
28  substantial risk of sexual abuse, harassment and molestation to the young female

1    student-patients who sought treatment through USC's Student Health Clinic.

2    Specifically, USC received numerous complaints of Defendant Tyndall's sexual

3    abuse, yet allowed such sexual abuse to continue unabated.

4         88.    USC, the Trustees, the Engemann Health Center, and Does 1 through

5    100 were deliberately indifferent to the substantial risk of sexual abuse, harassment,

6    and molestation posed to student-patients who came into contact with Tyndall at

7    Defendants USC, the Engemann Health Center, and/or with Does 1 through 100.

8    After receiving actual notice of Plaintiff and the Class members' complaints of

9    being sexually abused by Tyndall, USC, the Trustees, the Engemann Health Center,

10   and Does 1 through 100, through their employees, agents, and servants, ignored the

11   sexual abuse that Tyndall inflicted on Plaintiff and the Class members and allowed

12   him to continue treating female students – many of whom were still teenagers. It

13   was this conduct that constitutes willful indifference towards Plaintiff and the Class

14   members who would be subjected to Tyndall's unfettered sexual misconduct.

15        89.    As a result of the above-described conduct, Plaintiff and the Class

16   members suffered and continue to suffer great pain of mind and body, shock,

17   emotional distress, physical manifestations of emotional distress, embarrassment,

18   loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have

19   suffered and continue to suffer and were prevented and will continue to be

20   prevented from performing daily activities and obtaining the full enjoyment of life;

21   will sustain loss of earnings and earning capacity, and have incurred and will

22   continue to incur expenses for medical and psychological treatment, therapy, and

23   counseling.

24        90.    In subjecting Plaintiff and the Class members to the wrongful

25   treatment herein described, Tyndall, USC, the Trustees, the Engemann Health

26   Center, and Does 1 through 100, acted willfully and maliciously with the intent to

27   harm Plaintiff and the Class members, and in conscious disregard of Plaintiff and

28   the Class members' rights, so as to constitute malice and oppression under

California Civil Code section 3294. Plaintiff and the Class members are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100, in a sum to be shown according to proof. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**INVASION OF PRIVACY**
**(Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

91.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

92.    Plaintiff and the Class members allege that Defendant Tyndall intruded upon Plaintiff and the Class members' solitude, seclusion or private affairs and concerns by photographing their gynecological and/or other examinations, treatment and/or care without authorization or consent. This intrusion is highly offensive to reasonable individuals, such as Plaintiff and the Class members, and was totally unwarranted and unjustified, constituting invasion of privacy, and a violation of the Health Insurance Portability and Accountability Act (HIPAA).

93.    Defendant Tyndall carried out such actions and conduct as an employee, agent and/or representative of USC, the Trustees, the Engemann Health Center and/or Does 1-100, and such actions and conduct were carried out under one of USC's programs, which provides medical treatment to students, athletes, and the public.

94.    USC, the Trustees, the Engemann Health Center, and Does 1-100 are liable and vicariously liable for Defendant Tyndall's conduct.

95.    As a direct and proximate result of the conduct of Defendants, Plaintiff and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical

and emotional injuries, damages (both economic and noneconomic) and permanent

disability, in the past, present and future, for which this claim is made. The injuries

suffered by the Plaintiff are substantial, continuing, and permanent.

96.    Defendants' conduct as described herein was despicable and was

committed maliciously, fraudulently, and/or oppressively with the wrongful

intention of injuring Plaintiff and the Class members and with a willful and

conscious disregard her rights, justifying an award of punitive damages.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL HARASSMENT, Cal. Civ. Code § 51.9)**
**(Against Defendants Tyndall, USC, the Trustees, the Engemann Health**
**Center, and Does 1 through 100)**

97.    Plaintiff restates and incorporates herein by reference the preceding

paragraphs as if fully set forth herein.

98.    During Plaintiff and the Class members' time as students at USC,

Tyndall intentionally, recklessly and wantonly made sexual advances, solicitations,

requests, demands for sexual compliance of a hostile nature based on Plaintiff and

the Class members' gender that were unwelcome, pervasive and severe, including

but not limited to Tyndall groping and fondling Plaintiff and the Class members'

breasts and vaginas, all under the supervision of Defendants USC, the Trustees, the

Engemann Health Center, and Does 1-100, who were acting in the course and scope

of their agency with Defendant Tyndall and each of them.

99.    The incidents of abuse outlined herein above took place while Plaintiff

and the Class members were under the control of Tyndall, USC, the Trustees, the

Engemann Health Center, and Does 1 through 100, in their capacity and position as

supervisors of physicians, medical professionals, and staff at USC, the Trustees, the

Engemann Health Center, and Does 1 through 100, and while acting specifically on

behalf of Defendants.

100.    During Plaintiff and the Class members' time as students at USC,

Tyndall intentionally, recklessly, and wantonly did acts which resulted in harmful

1   and offensive contact with intimate parts of their persons, including but not limited

2   to, using his position of authority and age to force Plaintiff and the Class members

3   to give into Tyndall's sexual suggestions.

4       101.   Because of Plaintiff and the Class members' relationship with Tyndall,

5   USC, the Trustees, the Engemann Health Center, and Does 1 through 100,

6   Tyndall's status as the only full-time gynecologist employed by Defendant USC,

7   the Trustees, the Engemann Health Center and Does 1-100, and Plaintiff and the

8   Class members' generally young age as students at USC, Plaintiff and the Class

9   members were unable to easily terminate the relationship they had with Defendant

10  Tyndall.

11      102.   Because of Tyndall's age and position of authority, physical seclusion

12  of Plaintiff and the Class members, Plaintiff and the Class members' mental and

13  emotional state, and Plaintiff and the Class members general young age, Plaintiff

14  and the Class members were unable to, and did not and could not, give consent to

15  such acts.

16      103.   Even though Defendants USC, the Trustees, the Engemann Health

17  Center, and Does 1-100 knew or should have known of these activities by Tyndall,

18  Defendants USC, the Trustees, the Engemann Health Center and Does 1-100 did

19  nothing to investigate, supervise or monitor Tyndall to ensure the safety of the

20  student-patients in their charge.

21      104.   Because of Plaintiff and the Class members' relationship with

22  Defendants, as student-patients of Defendants, and Plaintiff and the Class members'

23  often young age, Plaintiff and the Class members were unable to easily terminate

24  the doctor-patient relationship they had with Defendants.

25      105.   A corporation is a "person" within meaning of California Civil Code

26  section 51.9, which subjects persons to liability for sexual harassment within a

27  business, service, or professional relationship, and such an entity defendant may be

28  held liable under this statute for the acts of its employees. Further, principles of

ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

106.   Defendants' conduct (and the conduct of their agents) was a breach of their duties to Plaintiff and the Class members.

107.   As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## SIXTH CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (Against Defendant Tyndall)

108.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

109.   Tyndall, in doing the things herein alleged, including intending to subject Plaintiff and the Class members to numerous instances of sexual abuse and molestation during their time at USC, beginning in or around 1989, and lasting for the duration of Plaintiff and the Class members' tenure with Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100, through or around 2017, including but not limited to instances of Tyndall groping and fondling the Plaintiff and the Class members' vaginas, all while Tyndall acted in the course and scope of his agency/employment with Defendants USC, the Trustees, the Engemann Health Center and Does 1-100, and each of them and were intended to cause harmful or

1  offensive contact with Plaintiff and the Class members' persons, or intended to put

2  Plaintiff and the Class members in imminent apprehension of such contact.

3      110.   In doing the things herein alleged, Plaintiff and the Class members

4  were put in imminent apprehension of a harmful or offensive contact by Tyndall

5  and actually believed Tyndall had the ability to make harmful or offensive contact

6  with Plaintiff and the Class members' persons.

7      111.   Plaintiff and the Class members did not consent to Tyndall intended

8  harmful or offensive contact with Plaintiff and the Class members' persons, or

9  intent to put Plaintiff and the Class members in imminent apprehension of such

10 contact.

11     112.   In doing the things herein alleged, Tyndall violated Plaintiff and the

12 Class members' rights, pursuant to California Civil Code section 43, of protection

13 from bodily restraint or harm, and from personal insult. In doing the things herein

14 alleged, Tyndall violated his duty, pursuant to Civil Code section 1708, to abstain

15 from injuring the person of Plaintiff and the Class members or infringing upon their

16 rights.

17     113.   As a result of the above-described conduct, Plaintiff and the Class

18 members have suffered and continue to suffer great pain of mind and body, shock,

19 emotional distress, physical manifestations of emotional distress including

20 embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment

21 of life; have suffered and continue to suffer and was prevented and will continue to

22 be prevented from performing daily activities and obtaining the full enjoyment of

23 life; will sustain loss of earnings and earning capacity, and/or have incurred and

24 will continue to incur expenses for medical and psychological treatment, therapy,

25 and counseling.

26     114.   Plaintiff and the Class members are informed and based thereon allege

27 that the conduct of Defendants was oppressive, malicious and despicable in that it

28 was intentional and done in conscious disregard for the rights and safety of others,

1  and were carried out with a conscious disregard of their right to be free from such

2  tortious behavior, such as to constitute oppression, fraud or malice pursuant to

3  California Civil Code section 3294, entitling Plaintiff and the Class members to

4  punitive damages against Defendants in an amount appropriate to punish and set an

5  example of Defendants.

**SEVENTH CLAIM FOR RELIEF**
**SEXUAL BATTERY, Cal. Civ. Code § 1708.5**
**(Against Defendant Tyndall)**

115.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

116.   During Plaintiff and the Class members' time as students at USC, Tyndall intentionally, recklessly and wantonly did acts which were intended to, and did result in harmful and offensive contact with intimate parts of Plaintiff and the Class members' persons, including but not limited to being subjected to numerous instances of sexual harassment and abuse by Tyndall, beginning in or around 1989, and lasting for the duration of Plaintiff and the Class members' tenure at USC, including but not limited to instances of Tyndall groping and fondling the Plaintiff's vagina, all while Tyndall acted in the course and scope of his agency and employment with Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100.

117.   Tyndall did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff and the Class members' bodies, and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of Plaintiff and the Class members' persons that would offend a reasonable sense of personal dignity.

118.   Defendant Tyndall carried out such actions and conduct as an employee, agent and/or representative of USC and were carried out under one of

1  Defendant USC programs, which provides medical treatment to students, athletes,

2  and the public.

3      119.   Because of Tyndall position of authority over Plaintiff and the Class

4  members, and their mental and emotional state coupled with their often-young age,

5  Plaintiff and the Class members did not give meaningful consent to such acts.

6      120.   As a direct, legal, and proximate result of the acts of Tyndall, Plaintiff

7  and the Class members sustained serious and permanent injuries to their persons, all

8  of his damage in an amount to be shown according to proof and within the

9  jurisdiction of the Court.

10     121.   As a direct result of the sexual abuse by Tyndall, Plaintiff and the

11 Class members have difficulty in reasonably or meaningfully interacting with

12 others, including those in positions of authority over her such as professors, and

13 supervisors, and in intimate, confidential and familial relationships, due to the

14 trauma of the sexual abuse inflicted upon them by Defendants Tyndall, USC, the

15 Trustees, the Engemann Health Center, and Does 1-100. This inability to interact

16 creates conflict with Plaintiff and the Class members' values of trust and

17 confidence in others, and has caused Plaintiff and the Class members substantial

18 emotional distress, anxiety, nervousness, and fear. As a direct result of the sexual

19 abuse and molestation by Tyndall, Plaintiff and the Class members suffered

20 immensely, including, but not limited to, encountering issues with a lack of trust,

21 various psychological sequelae, depressive symptoms, anxiety, nervousness, and

22 self-medicating behavior

23     122.   Upon information and belief, the conduct of Tyndall was oppressive,

24 malicious and despicable in that it was intentional and done in conscious disregard

25 for the rights and safety of others, and were carried out with a conscious disregard

26 of her right to be free from such tortious behavior, such as to constitute oppression,

27 fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff

28

1    and the Class members to punitive damages against Tyndall in an amount

2    appropriate to punish and set an example of Tyndall.

3                        **EIGHTH CLAIM FOR RELIEF**

4                              **NEGLIGENCE**

5    **(Against Defendants USC, the Trustees, the Engemann Health Center, and**
     **DOES 1 through 100)**

6        123.   Plaintiff restates and incorporates herein by reference the preceding

7    paragraphs as if fully set forth herein.

8        124.   From approximately 1989 through 2017, Tyndall was an actual and/or

9    apparent, duly-authorized agent, servant and/or employee of USC, the Trustees, the

10   Engemann Health Center, and Does 1-100, providing services through the USC

11   student health center system. Defendants USC, the Trustees, the Engemann Health

12   Center, and Does 1-100 knew and/or should have known that Tyndall had and was

13   capable of sexually, physically, and mentally abusing and harassing Plaintiff or

14   other victims.

15       125.   Defendants USC, the Trustees, the Engemann Health Center, and Does

16   1-100 had special duties to protect the Plaintiff and the Class members, when such

17   individuals were entrusted to Defendants' care. Plaintiff and the Class members'

18   care and health were entrusted to Defendants. Defendants USC, the Trustees, the

19   Engemann Health Center, and Does 1-100 voluntarily accepted the entrusted care

20   of Plaintiff and the Class members. As such, Defendants USC, the Trustees, the

21   Engemann Health Center, and Does 1-100 owed Plaintiff and the Class members as

22   student-patients, a special duty of care that adults and medical professionals dealing

23   with vulnerable medical patients and young students, owe to protect them from

24   harm. The duty to protect and warn arose from the special, trusting, confidential,

25   and fiduciary relationship between Defendants USC, the Trustees, the Engemann

26   Health Center, and Does 1-100, and Plaintiff and the Class members.

27       126.   Defendants USC, the Trustees, the Engemann Health Center, and Does

28   1 through 100 breached their duties of care to the Plaintiff and the Class members

by allowing Tyndall to come into contact with the Plaintiff and the Class members without effective supervision; by failing to adequately hire, supervise and retain Tyndall whom they permitted and enabled to have access to Plaintiff and the Class members; by concealing from Plaintiff and the Class members, the public and law enforcement that Tyndall was sexually harassing, molesting and abusing patients; by holding Tyndall out to Plaintiff and the Class members as being of high moral and ethical repute, in good standing and trustworthy; and by failing to report Tyndall's misconduct to the California Medical Board.

127.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100, further breached their duties to Plaintiff and the Class members by failing to investigate or otherwise confirm or deny such facts of sexual abuse by Tyndall, failing to reveal such facts to Plaintiff and the Class members, the USC community and law enforcement agencies, and by placing Tyndall into a position of trust and authority, holding him out to Plaintiff and the Class members and the public as being in good standing and trustworthy.

128.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 breached their duty to Plaintiff and the Class members by failing to adequately monitor and supervise Defendant Tyndall and failing to prevent Defendant from committing wrongful sexual acts with medical patients, including Plaintiff and the Class members. Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' voluminous past records of sexual misconduct by Tyndall caused Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 to know, or gave them information where they should have known, of Tyndall incapacity to serve as a university physician – especially a gynecologist -- providing for the physical care of young female student-patients.

129.   As a direct, proximate and foreseeable result of the above-described conduct, Plaintiff and the Class members have suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of

emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity; and may incur expenses for medical and psychological treatment, therapy, and counseling.

**NINTH CLAIM FOR RELIEF**
**GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT**
**(Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

130.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein, and to the extent necessary, plead this claim for relief in the alternative.

131.   USC, the Trustees, the Engemann Health Center, and Does 1-100 owed Plaintiff and the Class members a duty to use due care to ensure their safety and freedom from sexual assault, harassment, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Tyndall.

132.   Defendant Tyndall owed Class Plaintiff and the Class members a duty of due care in carrying out his duties in a reasonable safe manner as an employee, agent, and/or representative of USC, the Trustees, the Engemann Health Center, and Does 1-100.

133.   By seeking medical treatment from Defendant Tyndall in the course of his employment, agency, and/or representation of USC, the Trustees, the Engemann Health Center, and Does 1-100, a special, confidential, and fiduciary relationship between Plaintiff and the Class members and Defendant Tyndall was created, resulting in Defendant Tyndall owing Plaintiff and the Class members a duty to use due care.

134.   USC, the Trustees, the Engemann Health Center, and Does 1-100s' failure to adequately supervise Defendant Tyndall --especially once they knew or should have known of complaints regarding his nonconsensual sexual touching, harassment, boundary violations and assaults during examinations -- was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and the Class members.

135.   Defendant Tyndall's conduct in sexually assaulting, harassing, abusing, and violating Plaintiff and the Class members in the course of his employment, agency, and/or representation of USC and under the guise of rendering medical care was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and the Class members.

136.   USC, the Trustees, the Engemann Health Center, and Does 1-100s' conduct demonstrated a willful disregard for precautions to ensure Plaintiff and the Class members' safety.

137.   USC, the Trustees, the Engemann Health Center, and Does 1-100s' conduct as described above, demonstrated a willful disregard for Plaintiff and the Class members' rights.

138.   USC, the Trustees, the Engemann Health Center, and Does 1-100 breached duties owed to Plaintiff and the Class members and were grossly negligent when it conducted itself by the actions described above, said acts having been committed with reckless disregard for Plaintiff and the Class members' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

139.   As a result of the conduct of the Defendants, Plaintiff and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries, damages (both economic and noneconomic) and permanent disability, in the past,

present and future, for which this claim is made. The injuries suffered by Plaintiff and the Class members are substantial, continuing and permanent.

140.   Defendants' conduct as described herein was grossly negligent and/or wanton and reckless because it was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiff and the Class members and with a willful and conscious disregard of Plaintiff and the Class members' rights, justifying an award of punitive damages.

## TENTH CLAIM FOR RELIEF
### NEGLIGENT SUPERVISION
**(Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

141.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

142.   By virtue of Plaintiff and the Class members' special relationship with Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100, and the relationship between Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100 with Defendant Tyndall, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 owed Plaintiff and the Class members a duty to provide reasonable supervision of Tyndall, to use reasonable care in investigating Tyndall background, and to provide adequate warning to Plaintiff and the Class members of Tyndall's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of patients, USC, the Trustees, the Engemann Health Center, and Does 1 through 100 had a duty to protect, supervise, and monitor both the Plaintiff and the Class members from being preyed upon by sexual predators, and to supervise and monitor Tyndall such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiff and the Class members.

143.   USC, the Trustees, the Engemann Health Center, and Does 1 through 100 expressly and implicitly represented that their physicians, faculty, and staff,

1    including Tyndall, were not a sexual threat to those individuals and others who

2    would fall under Tyndall's influence, control, direction, and care.

3         144.   Defendants USC, the Trustees, the Engemann Health Center, and Does

4    1-100, by and through their respective agents, servants, and employees, knew or

5    should have known of Tyndall's dangerous and exploitive propensities and that

6    Tyndall was an unfit agent. Despite such knowledge, Defendants USC, the

7    Trustees, the Engemann Health Center, and Does 1-100 negligently failed to

8    supervise Tyndall in his position of trust and authority as a team physician,

9    physician, faculty member and authority figure over patients and young women,

10   where he was able to commit wrongful acts of sexual misconduct against Plaintiffs.

11   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 failed

12   to provide reasonable supervision of Tyndall, failed to use reasonable care in

13   investigating Tyndall, and failed to provide adequate warning to Plaintiff of

14   Tyndall's dangerous propensities and unfitness. Defendants USC, the Trustees, the

15   Engemann Health Center, and Does 1-100 further failed to take reasonable steps to

16   ensure the safety of patients, including Plaintiff and the Class members, from

17   sexual harassment, molestation, and abuse.

18        145.   At no time during the periods of time alleged herein did Defendants

19   USC, the Trustees, the Engemann Health Center, and Does 1-100 have in place a

20   reasonable system or procedure to investigate, supervise physicians, faculty

21   members or staff, including Tyndall, to prevent sexual harassment, molestation and

22   abuse of those individuals, nor did they implement a system or procedure to oversee

23   or monitor conduct toward patients and others in Defendant USC, the Trustees, the

24   Engemann Health Center, and Does 1-100s' care.

25        146.   Defendants USC, the Trustees, the Engemann Health Center, and Does

26   1-100 were aware or should have been aware of how vulnerable medical patients

27   were to sexual harassment, molestation and abuse by physicians, faculty members

28

and other persons of authority within Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' entities.

147.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100were put on notice, knew and/or should have known that Tyndall had previously engaged and was continuing to engage in unlawful sexual conduct with student patients and had committed other felonies, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff and the Class members, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100.

148.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100were placed on actual or constructive notice that Tyndall had molested other student-patients during his employment with Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100. However, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 did not reasonably investigate, supervise, or monitor Tyndall to ensure the safety of the patients.

149.   Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' conduct was a breach of their duties to Plaintiff and the Class members.

150.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 breached their duty to Plaintiffs by, *inter alia,* failing to adequately monitor and supervise Tyndall and stop Tyndall from committing wrongful sexual acts with student-patients, including Plaintiff and the Class members.

151.   As a result of the above-described conduct, Plaintiff and the Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of

life; may sustain loss of earnings and earning capacity, and/or may incur expenses for medical and psychological treatment, therapy, and counseling.

## ELEVENTH CLAIM FOR RELIEF
### NEGLIGENCE *PER SE*
**California Equity in Higher Education Act, Cal. Ed. Code §§ 66270 *et. seq.* (Against Defendants Tyndall, USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

152.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

153.   California Education Code § 231.5 states, *inter alia,* that "all persons, regardless of their sex, should enjoy freedom from discrimination of any kind in the educational institutions of the state. The purpose of this section is to provide notification of the prohibition against sexual harassment as a form of sexual discrimination."

154.   Plaintiff and the Class members are "persons" under the statutory language of California Education Code § 231.5 as stated herein above and for whose protection the statute, ordinance or regulation was adopted.

155.   Defendant USC is an educational institution within the state of California and within the state of California and at all times relevant hereto is and was subject to the California Equity in Higher Education Act.

156.   Defendant Tyndall's actions were carried out under a USC program, which provides services to students, athletes, and the public.

157.   Defendant Tyndall's conduct and actions toward Class Plaintiffs, that being nonconsensual digital vaginal penetration, touching of Plaintiff and the Class members' vaginal areas, and touching and fondling of Plaintiff and the Class members' breasts and other areas of the body constitutes sex discrimination and harassment under California Education Code § 231.5.

158.   Upon information and belief, as early as the 1990s, an "appropriate person" at USC had actual knowledge of sexual assault, harassment, abuse, and

molestation committed by Defendant Tyndall. Specifically, USC, the Trustees, the Engemann Health Center, and/or Does 1 through 100 were notified about Defendant Tyndall's behavior by students and/or clinic staff beginning in the 1990s on more than one occasion, including specific notifications of unwarranted photographs taken of female patient genitalia and unwarranted fondling and sexual comments during medical examinations.

159.   Under applicable law, Defendants, by and through their employees and agents, were medical care providers and were under a statutory duty to report known or suspected incidents of sexual molestation or abuse of student-patients or any individuals in their care to the appropriate authorities, and not to impede the filing of any such report.

160.   Defendants knew or should have known that their gynecological physician, Tyndall, and other staff of Defendants, had sexually molested, abused or caused touching, battery, harm, and/or other injuries to young female students including Plaintiff and the Class members, giving rise to a duty to report such conduct.

161.   Defendants knew, or should have known, in the exercise of reasonable diligence, that an undue risk to patients, including Plaintiff and the Class members, existed because Defendants did not comply with mandatory reporting requirements.

162.   By failing to report the continuing molestations and abuse by Tyndall, which Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 knew or should have known about, and by ignoring the fulfillment of the mandated compliance with the reporting requirements, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 created the risk and danger contemplated by the applicable mandated reporting laws, and as a result, unreasonably and wrongfully exposed Plaintiff and the Class members and other patients to sexual molestation and abuse.

163.   Plaintiff and the Class members were members of the class of persons for whose protection applicable mandated reporting laws were specifically adopted to protect.

164.   Had Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 adequately reported the molestation of Plaintiff and the Class members and other patients, as required by applicable mandated reporting laws, further harm to Plaintiff and the Class members and other individuals would have been avoided.

165.   As a proximate result of Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' failure to follow the mandatory reporting requirements, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 wrongfully denied Plaintiff and the Class members the intervention of law enforcement by the appropriate authorities. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the molestation of Plaintiff and the Class members by Defendant Tyndall.

166.   The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiff and the Class members by Defendant Tyndall, were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

167.   As a result, Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' failure to comply with the mandatory reporting requirements constituted a *per se* breach of Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' duties to Plaintiff and the Class members.

168.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 breached their duty to Plaintiff and the Class members by, *inter alia,* failing to adequately monitor and supervise Tyndall and stop Tyndall from committing wrongful sexual acts with patients, including Plaintiff and the Class members.

169.   As a result of the above-described conduct, Plaintiff and the Class members have suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continue to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or may incur expenses for medical and psychological treatment, therapy, and counseling.

## TWELFTH CLAIM FOR RELIEF
### NEGLIGENT HIRING/RETENTION
**(Against Defendants USC, the Trustees, the Engemann Health Center, and Does 1 through 100)**

170.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

171.   By virtue of Plaintiff and the Class members' special relationship with Defendants, and Defendants' relation to Tyndall, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 owed Plaintiff and the Class members a duty to not hire or retain, given his dangerous and exploitive propensities, which Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 knew or should have known about had they engaged in a reasonable, meaningful and adequate investigation of her background prior to his hiring or retaining her in subsequent positions of employment.

172.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 expressly and implicitly represented that the team staff, physicians, trainers, faculty members, and team physicians, including Defendant Tyndall, were not a sexual threat to student-patients and others who would fall under Defendant Tyndall's influence, control, direction, and guidance.

173.   At no time during the periods of time alleged did Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 have in place a reasonable

1  system or procedure to investigate, supervise and monitor its Student Health Center

2  physicians and healthcare professionals, including Tyndall, to prevent pre-sexual

3  grooming or sexual harassment, molestation and abuse of student-patients nor did

4  they implement a system or procedure to oversee or monitor conduct toward

5  student-patients and/or others in Defendant USC, the Trustees, the Engemann

6  Health Center, and Does 1-100s' care.

7       174.   Defendants USC, the Trustees, the Engemann Health Center, and Does

8  1-100 were aware or should have been aware and understand how vulnerable young

9  female students were to sexual harassment, molestation and abuse by faculty

10  members, physicians, and other persons of authority within the control of

11  Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 prior

12  to Plaintiff and the Class members' sexual abuse by Tyndall.

13       175.   Defendants USC, the Trustees, the Engemann Health Center, and Does

14  1-100 were put on notice, and should have known that Tyndall had previously

15  engaged and continued to engage in unlawful sexual conduct with student-patients,

16  and was committing other felonies, for his own personal gratification, and that it

17  was, or should have known it would have been foreseeable that he was engaging, or

18  would engage in illicit sexual activities with Plaintiff and the Class members, under

19  the cloak of his authority, confidence, and trust, bestowed upon her through

20  Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100.

21       176.   Defendants USC, the Trustees, the Engemann Health Center, and Does

22  1-100 were placed on actual or constructive notice that Defendant Tyndall had

23  molested or was molesting patients, both before his employment within Defendants

24  USC, the Trustees, the Engemann Health Center, and Does 1-100, and during that

25  employment. Defendants USC, the Trustees, the Engemann Health Center, and

26  Does 1-100 had knowledge of inappropriate conduct and molestations committed

27  by Defendant Tyndall before and during his employment, yet chose to allow him to

28  remain unsupervised where he sexually abused Plaintiff and Class members.

177.   Even though Defendants knew or should have known of these sexually illicit activities by Tyndall, Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 failed to use reasonable care in investigating Defendant Tyndall and did nothing to reasonably investigate, supervise or monitor Tyndall to ensure the safety of the patients.

178.   Defendant USC, the Trustees, the Engemann Health Center, and Does 1-100s' conduct was a breach of their duties to Plaintiff and the Class members.

179.   As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

180.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 owed Plaintiff and the Class members a duty to take reasonable protective measures to protect Plaintiff and the Class members and other student-patients from the risk of sexual harassment, molestation, and abuse by Defendant Tyndall by properly warning, training, or educating Plaintiff and the Class members and other about how to avoid such a risk.

181.   Defendants USC, the Trustees, the Engemann Health Center, and Does 1-100 breached their duty to take reasonable protective measures to protect Plaintiff and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Tyndall, such as the failure to properly warn, train or educate Plaintiff and the Class members about how to avoid such a particular risk that Tyndall posed—of sexual misconduct.

1    182.   Defendants USC, the Trustees, the Engemann Health Center, and Does

2    1-100 breached their duty to take reasonable protective measures to protect Plaintiff

3    and the Class members from the risk of sexual harassment, molestation, and abuse

4    by Defendant Tyndall, by failing to supervise and stop employees of Defendants,

5    including Tyndall, from committing wrongful sexual acts with student-patients,

6    including Plaintiff and the Class members.

7    183.   As a result of the above-described conduct, Plaintiff and the Class

8    members suffered and continue to suffer great pain of mind and body, shock,

9    emotional distress, physical manifestations of emotional distress including

10   embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment

11   of life; has suffered and continues to suffer and were prevented and will continue to

12   be prevented from performing daily activities and obtaining the full enjoyment of

13   life; will sustain loss of earnings and earning capacity, and/or have incurred and

14   will continue to incur expenses for medical and psychological treatment, therapy,

15   and counseling.

16   **THIRTEENTH CLAIM FOR RELIEF**
   **NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE**
17   **(Against Defendants USC, the Trustees, the Engemann Health Center, and**
18   **Does 1 through 100)**

19   184.   Plaintiff restates and incorporates herein by reference the preceding

20   paragraphs as if fully set forth herein.

21   185.   Defendants USC, the Trustees, the Engemann Health Center, and Does

22   1-100 owed Plaintiff and the Class members a duty to take reasonable protective

23   measures to protect her and other student-patients from the risk of sexual

24   harassment, molestation, and abuse by Defendant Tyndall by properly warning,

25   training, or educating Plaintiff and the Class members and other about how to avoid

26   such a risk.

27   186.   Defendants USC, the Trustees, the Engemann Health Center, and Does

28   1-100 breached their duty to take reasonable protective measures to protect Plaintiff

1  and other patients from the risk of sexual harassment, molestation, and abuse by

2  Defendant Tyndall, such as the failure to properly warn, train or educate Plaintiff

3  and the Class members and other patients about how to avoid such a particular risk

4  that Tyndall posed—of sexual misconduct.

5      187.   Defendants USC, the Trustees, the Engemann Health Center, and Does

6  1-100 breached their duty to take reasonable protective measures to protect

7  Plaintiff, Class members, and other patients from the risk of sexual harassment,

8  molestation and abuse by Defendant Tyndall, by failing to supervise and stop

9  employees of Defendants USC, the Trustees, the Engemann Health Center, and

10  Does 1-100, including Tyndall, from committing wrongful sexual acts with student-

11  patients, including Plaintiff and the Class members.

12      188.   As a result of the above-described conduct, Plaintiff and the Class

13  members have suffered and continue to suffer great pain of mind and body, shock,

14  emotional distress, physical manifestations of emotional distress including

15  embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment

16  of life; have suffered and continue to suffer and were prevented and will continue to

17  be prevented from performing daily activities and obtaining the full enjoyment of

18  life; will sustain loss of earnings and earning capacity, and/or have incurred and

19  will continue to incur expenses for medical and psychological treatment, therapy,

20  and counseling.

21              **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff, individually and on behalf of the class defined

23  above, respectfully requests that the Court:

24      A.    Certify this action as a class action under Rule 23 of the Federal Rules

25  of Civil Procedure, appoint Plaintiff as class representative, and appoint the

26  undersigned counsel as class counsel;

27      B.    Award Plaintiff and class members compensatory, restitutionary,

28  rescissory, general, consequential, punitive, and/or exemplary damages in an

1    amount to be determined at trial;

2        C.    Award pre-judgment interest as permitted by law;

3        D.    Enter appropriate equitable relief;

4        E.    Award reasonable attorneys' fees and costs, as provided for by law;

5    and

6        F.    Grant such other and further relief as the Court deems just and proper.

7    **<u>DEMAND FOR JURY TRIAL</u>**

8        Plaintiff demands a trial by jury on all issues so triable.

9

10    Dated:  June 5, 2018        Respectfully submitted,

11

12        By:  /s/ Jonathan D. Selbin
        Jonathan D. Selbin (Bar No. 170222)

13

14        Annika K. Martin (*pro hac vice* pending)
    jselbin@lchb.com

15        akmartin@lchb.com
    LIEFF CABRASER HEIMANN &

16    BERNSTEIN, LLP
    275 Battery Street, 29th Floor

17        San Francisco, CA  94111-3339
    Telephone:  415.956.1000

18        Facsimile:  415.956.1008

19

20        By:  /s/ Joseph G. Sauder

21

22        Joseph G. Sauder (*pro hac vice* pending)
    Matthew D. Schelkopf

23        Lori G. Kier
    jgs@sstriallawyers.com

24        mds@sstriallawyers.com
    lgk@sstriallawyers.com

25        SAUDER SCHELKOPF LLC
    555 Lancaster Avenue

26        Berwyn, Pennsylvania 19312
    Telephone:  888.711.9975

27

28        *Counsel for Plaintiff and the Putative Class*